[No. 25057-4-I.  Division One.  December 20, 1990.]

KING COUNTY, *Appellant,* v. SQUIRE INVESTMENT CO., ET AL, *Respondents.*

*Norm Maleng*, Prosecuting Attorney, *Frederick A. Kaseburg*, Special Deputy, and *Stanley D. Tate*, Deputy, for appellant.

*Robert Johns*, *William Hickman*, *Darrell S. Mitsunaga*, and *Reed McClure*, for respondent Squire Investment Co.

*Ruth Tressel*, for respondent Metropolitan Seattle.

*Daryl A. Deutsch*, for respondents Davidson, et al.

FORREST, J.—King County appeals from the trial court's grant of summary judgment to Squire Investment Company (Squire) and to Davidson in a condemnation/quiet title action, in which the court found that the disputed property was either a railroad right of way or a fee simple determinable. King County also appeals from the court's supplemental judgment, which awarded Squire $182,029 for attorney fees, expert witness fees and litigation expenses pursuant to RCW 8.25.070. Respondent Linzy cross–appeals from the trial court's holding that he had no interest in the abandoned right of way. We affirm in part and reverse in part.

On March 29, 1887, Watson and Ida Squire executed a deed granting a half–mile right of way to the Seattle Lake Shore and Eastern Railway Company. The material portion of the deed reads as follows with the handwritten additions by Mr. Squire set forth in boldface type:

> In Consideration of the benefits and advantages to accrue to **us** from the location, construction and operation of the Seattle Lake Shore and Eastern Railway, in the County of King, in Washington Territory, **we** do hereby donate, grant and convey unto said Seattle Lake Shore and Eastern Railway a right–of–way **Fifty (50)** feet in width through said lands in **said** County, described as follows, to–wit: **[legal description]**.
>
> Such right–of–way strip to be **twenty–five (25)** feet in width on each side of the center line of the railway track as located across **the** said lands by the Engineer of said Railway Company, which location is described as follows, to–wit **[description.]**
>
> . . . .
>
> To Have and to Hold the said premises, with the appurtenances, unto the said party of the second part, and to its successors and assigns forever **or so long as said land is used as a right–of–way by said railway Company, Expressly reserving to said grantors their heirs and assigns all their riparian rights and water front rights on the shores of Lake Washington. And this grant is upon the condition that said railway shall be completed over said lands on or before January 1st, 1888 . . ..**

On November 20, 1896, Squire conveyed the property through which the railway right of way ran to the Union Trust Company with the following language included in the deed: "together with all . . . the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining and the reversion and reversion remainder and remainders rents issues and profits thereof."

The name "Union Trust Company" was later changed to "Squire Investment Company." In 1976, Squire Investment Company was dissolved. Its real property interests were distributed to its shareholders, who were the heirs of Watson and Ida Squire.

On July 29, 1985, the Interstate Commerce Commission issued a certificate of abandonment permitting Burlington Northern, the successor railroad to the Seattle Lake Shore and Eastern Railway Company, to abandon railroad service over the right of way. On December 19, 1985, Burlington Northern quitclaimed to King County any interest it had in the property.

King County filed its quiet title action and petition for condemnation on July 30, 1987, naming as parties "Squire Investment Company," Don Linzy and approximately 100 others. An "Order Adjudicating Public Use and Necessity," permitting the County to begin using the right of way as a trail, was filed on October 20, 1987. King County filed a motion for summary judgment; Squire filed a cross motion.

The trial court granted partial summary judgment to Squire, holding that the original deed created a fee simple determinable or a right of way easement. In either case, the trial court held, the original grantor's heirs owned the property. The court further concluded that King County's intended use for the property was inconsistent with the use for which the right of way was granted. It reserved the issue of just compensation for trial.

A jury returned a verdict of $750,000 in favor of Squire on the issue of just compensation. King County had previously offered $650,000. In a supplemental judgment, the

trial court awarded $182,029 for attorney fees, expert witness fees and litigation expenses pursuant to RCW 8.25-.070.

On May 19, 1989, the trial court granted partial summary judgment against respondent Don Linzy. Linzy claimed an interest in the right of way as an abutting property owner. He cross–appeals from the summary judgment.

King County acknowledges that the original deed conveyed a fee simple determinable or a right of way easement. It contends, however, that the limitation within the deed, which conveyed the property "so long as said land is used as a right–of–way by said railway Company," was never violated, despite Burlington Northern's formal abandonment, because the railroad once carried passengers traveling for recreation, just as a trail would. It further argues that the trial court's holding promotes forfeitures and any reverter rights were personal to Watson and Ida Squire. We disagree.

### THE SQUIRE DEED

■ Although the language of a particular deed defines the interest conveyed, rights of way granted to a railroad are frequently held to create easements. As stated in 2 J. Grimes, *Thompson on Real Property* § 381, at 506 (1980 repl.):

> A deed of a right–of–way for a railroad, habendum "so long as the same shall be used for the operation of a railroad," provided it should be built by a certain date, gives an easement merely and not a fee, and the agreement to build the road is a condition subsequent, and not a mere covenant.

(citing *Reichenbach v. Washington Short Line Ry.*, 10 Wash. 357, 38 P. 1126 (1894)).[1]

---

[1]*See also* 4 J. Grimes, *Thompson on Real Property* § 1849, at 371 (1979 repl.) ("Where land is conveyed to a railroad company for a right–of–way, such conveyance, though in the form of a warranty deed, is generally construed as passing an easement or right–of–way only, is limited to that use, and must revert to the owner of the fee when the use is abandoned.") (Footnote omitted.); 3 H. Tiffany, *Real Property* § 772, at 232 (3d ed. 1939) ("However, a grant of a right of way to a

Previous Washington cases show a strong tendency to construe such rights of way as easements. In *Swan v. O'Leary*,[2] the court considered whether the deed which conveyed two rights of way for use by a railroad created a fee or an easement.[3] Relying on *Morsbach v. Thurston Cy.*,[4] the *Swan* court stated:

> [W]hen the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad the deed passes an easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey a fee title.

*Swan*, at 537.

In *Pacific Iron Works v. Bryant Lumber & Shingle Mill Co.*, 60 Wash. 502, 505, 111 P. 578 (1910), the deed stated that the land was to be used "for railway purposes, but if it should cease to be used for a railway the said premises shall revert to said grantors, their heirs, executors, administrators or assigns.'" (Italics omitted.) The court, construing the deed as a whole, held that the instrument conveyed a right of way easement, despite the deed's language, which would typically be interpreted as creating a fee simple subject to a condition subsequent.

In *Reichenbach v. Washington Short Line Ry.*, 10 Wash. 357, 358, 38 P. 1126 (1894), the deed conveyed a railroad right of way "so long as the same shall be used for the operation of a railroad." It also permitted the grantors to cross over the right of way and prohibited fencing. As in the instant case, the deed conditioned conveyance upon completion of the railroad line by a certain date. The court held that an easement had been granted.

---

railroad company does not usually convey a fee, but an easement only.") (Footnote omitted.); Annot., *Deed to Railroad Company as Conveying Fee or Easement*, 6 A.L.R.3d 973 (1966).

[2]37 Wn.2d 533, 225 P.2d 199 (1950).

[3]The respondent in *Swan*, at 534, conveyed the property "for the purpose of a Railroad right–of–way . . .". (Italics omitted.) Unlike the instant case, there were no "magic" words in the deed suggesting a fee was created.

[4]152 Wash. 562, 574–75, 278 P. 686 (1929).

The Squire deed granted a "right–of–way Fifty (50) feet in width through said lands". This suggests an easement was conveyed. Both King County and Squire note, however, that the habendum clause contains the handwritten language, "or so long as said land is used as a right–of–way by said railway Company," which arguably suggests conveyance of a fee simple determinable. If the granting clause merely conveyed the land to the railroad without reference to a right of way, the "so long as" language would create such a fee. Since the language in the granting clause strongly suggests conveyance of an easement, however, we find it more plausible that the "so long as" language was inserted by Squire to preclude the claim that he conveyed a fee simple to the railroad, particularly since the habendum clause granted the interest to the railroad and "to its successors and assigns forever". The authorities and cases discussed above clearly support construing the Squire deed as an easement.

In *Veach v. Culp*,[5] the court construed a deed which granted a right of way and used the standard habendum clause language, but without the additional language conditioning use of the property on its continued use as a railroad right of way. The successor railroad argued that the absence of such limiting language showed a fee was conveyed. The *Veach* court disagreed, holding that the language of the deed which described the conveyance of a right of way indicated an easement had been conveyed. The instant case is much more compelling since Squire specifically included language in the habendum clause reiterating the limitation of the conveyance to use as a right of way. We hold that an easement was conveyed.

King County contends, however, that its use of the right of way as a recreational trail is within the scope of the interest conveyed to the railroad and, hence, it was not abandoned. The County's argument is without merit. Burlington Northern formally abandoned the right of way on

[5]92 Wn.2d 570, 599 P.2d 526 (1979).

July 29, 1985. The easement was extinguished at that moment and its interest reverted to the Squires' heirs.[6] Burlington Northern had no interest to convey to King County for use as a railroad much less as a trail. Even if the right of way had not been formally abandoned, *Lawson v. State*[7] defeats the County's argument. Responding to a similar argument, the court stated:

> Applying common law principles, we hold that a change in use from "rails to trails" constitutes abandonment of an easement which was granted for railroad purposes only. At common law, therefore, the right of way would automatically revert to the reversionary interest holders.

*Lawson,* at 452.

King County's reliance upon *Martin v. Seattle*[8] is misplaced. In *Martin,* the court held that the deed in question contained a condition subsequent, not a fee on limitation or an easement, and decided that although the condition had been breached, the grantor and successors did not exercise their power of termination within a reasonable time. In contrast, the Squire deed conveyed an easement and, therefore, no action was required by the grantors' successors to terminate the interest.

In summary, the Squire deed conveyed an easement to the railroad which terminated when its successor, Burlington Northern, abandoned the line with the approval of the ICC. The reversionary interest passed to the successors of the grantors. The trial court's alternative holding that the Squire deed conveyed an easement and, consequently, King County acquired no interest in the right of way is affirmed. These holdings render it unnecessary to address King County's other contentions as to title.

---

[6]*See also Roeder Co. v. Burlington Northern, Inc.,* 105 Wn.2d 567, 571, 716 P.2d 855 (1986) (railroad right of way reverts to reversionary interest holders when a railroad company abandons a line).

[7]107 Wn.2d 444, 730 P.2d 1308 (1986).

[8]111 Wn.2d 727, 765 P.2d 257 (1988).

## ATTORNEY FEES

King County appeals from the award of attorney fees contending that the fees are unreasonably large and that the award improperly included fees relative to both the quiet title portion as well as the condemnation portion of this dispute.

Attorney fees are permitted only if based on a statutory, contractual or equitable ground.[9] Here, the award is based on RCW 8.25.070, which states in part:

> (1) Except as otherwise provided in subsection (3) of this section, *if a trial is held for the fixing of the amount of compensation to be awarded to the owner or party having an interest in the property being condemned,* the court shall award the condemnee reasonable attorney's fees and reasonable expert witness fees in the event of any of the following:
>
> . . . .
> (b) If the judgment awarded as a result of the trial exceeds by ten percent or more the highest written offer in settlement submitted to those condemnees appearing in the action by condemnor in effect thirty days before the trial.
>
> . . . .
> (3) Reasonable attorney fees and reasonable expert witness fees authorized by this section shall be awarded only if the condemnee stipulates, if requested to do so in writing by the condemnor, to an order of immediate possession and use of the property being condemned . . ..

(Italics ours.)

In this proceeding, the County filed a quiet title action to ascertain the ownership of the right of way in combination with a condemnation action to acquire property from the owners once ascertained. In a typical quiet title action, there is no statutory basis for awarding attorney fees to prevailing parties. If the County had simply filed a separate quiet title action, the defendants would not have been entitled to attorney fees even if successful. There is no reason for a different result when a condemnation action is combined with a quiet title action in a single suit. Indeed, such a procedure efficiently utilizes scarce judicial resources and should be encouraged.

---

[9] *Miotke v. Spokane,* 101 Wn.2d 307, 338, 678 P.2d 803 (1984).

It is true that the owners must be determined before a condemnation action may proceed.[10] The purpose of an award pursuant to RCW 8.25.070, however, is to ensure that owners receive full compensation for property taken for public use, without a decrease due to attorney fees when they increase their condemnation award by more than 10 percent over the condemnor's highest settlement offer. No equivalent purpose compels an award of attorney fees to a party which establishes its ownership in a quiet title action, and no statutory basis exists for providing such an award.

■ It is not uncommon for lawsuits to involve some claims which allow for attorney fees with some claims that do not. In such cases the rule is well established that the prevailing party should be awarded attorney fees only for the legal work completed on the portion of the claim permitting such an award.[11] Here, the language of the statute is clear: attorney and expert witness fees are to be awarded only when they relate to a trial held to fix the amount of compensation to be awarded to the condemnee.[12] Trial of a quiet title action is not held for the purpose of fixing compensation.

*State v. Evans*[13] and *Peterson v. Port of Seattle*[14] do not require a different result. The *Evans* court did not even consider RCW 8.25.070. The language from *Evans* relied on by Squire related to the court's holding that the State had standing to challenge whether the respondent had an

---

[10]*State v. Evans*, 96 Wn.2d 119, 634 P.2d 845 (1981).

[11]*Travis v. Washington Horse Breeders Ass'n, Inc.*, 111 Wn.2d 396, 410, 759 P.2d 418 (1988); *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 744, 733 P.2d 208 (1987); *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 66, 738 P.2d 665 (1987).

[12]*See State v. Buckley*, 18 Wn. App. 798, 572 P.2d 730 (1977) (condemnees were not entitled to an award under RCW 8.25.070, which applies if a trial is held to fix compensation for condemned property, because they had waived trial and accepted the amount offered by the State).

[13]96 Wn.2d 119, 634 P.2d 845 (1981).

[14]94 Wn.2d 479, 618 P.2d 67 (1980).

enforceable interest in certain properties, and is inapposite here. In *Peterson,* the just compensation trial was not conducted. The court held, however, that the preliminary proceedings were an essential part of the condemnation process justifying an award of fees under RCW 8.25.070. Such is not the case here where the quiet title action was independent.

The specific language of RCW 8.25.070 and its underlying policy require that Squire only receive an award for attorney and expert witness fees incurred while litigating the condemnation portion of the litigation. Accordingly, we remand this action to the trial court to segregate the fees between the quiet title and the condemnation portions of the dispute and to make a reasonable award of fees under RCW 8.25.070 relating to the condemnation action.[15] As to attorney fees on appeal, King County and Squire each prevailed in part, and accordingly, we award no attorney fees on appeal.

## Linzy Cross Appeal

Respondent Linzy, an abutting landowner, cross–appeals from the trial court's conclusion that he had no interest in the right of way. Although the first deed in Linzy's chain of title excepted the right of way, the subsequent deeds, including the deed by which Linzy acquired title, were by metes and bounds description referencing the railroad right of way as a boundary.

*Roeder Co. v. Burlington Northern, Inc.*[16] is controlling. In *Roeder,* the court stated the rule for abutting landowners as follows:

> Generally then, the conveyance of land which is bounded by a railroad right of way will give the grantee title to the center line of the right of way if the grantor owns so far, unless the

---

[15]The general standards for awarding attorney fees are applicable. The County's contention that the fees must be limited to a percentage of the $100,000 increase over the highest settlement offer is completely meritless.

[16]105 Wn.2d 567, 716 P.2d 855 (1986).

grantor has expressly reserved the fee to the right of way, or the grantor's intention to not convey the fee is clear.

(Footnote omitted.) *Roeder,* at 576. The court qualified the general rule, however, by holding that it is rebutted when "a deed refers to the right of way as a boundary but also gives a metes and bounds description of the abutting property". *Roeder,* at 577.

Linzy acknowledges that the rule as stated in *Roeder* would defeat his claim to a portion of the right of way since the deed of Mr. M. Barquist, Linzy's predecessor in interest, conveying title to the Seattle Lakeshore and Eastern Railway Company is described in metes and bounds and references the right of way as a border. Linzy notes that in *Roeder,* the successor to the grantor of the right of way appeared and argued its claim against the abutting landowners. He urges this court to hold that the rule does not apply here since the successors are not in court nor even identified. We decline to do so. *Roeder* does not recognize or support any such limitation, nor do we find any compelling policy reasons justifying such an exception.

Linzy's ownership should be determined according to the title he holds rather than according to whether other parties fortuitously learned of the litigation and appeared to press their claim. Why should the successors to the grantor of a right of way be deprived of their title without notice? The fact that the property may have greater value to the abutting owner than to the successor of the grantor was not found persuasive in *Roeder* and is unpersuasive here. The court correctly determined that Linzy had no interest in the property in question.

The judgment below is affirmed in both the Squire and Davidson cases except as to the award of attorney and expert witness fees in the Squire condemnation action which is remanded for recalculation consistent with this opinion.

COLEMAN, C.J., and PEKELIS, J., concur.

Review denied at 116 Wn.2d 1021 (1991).